IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PRIORITY 1 AUTOMOTIVE GROUP, INC.<br>d/b/a BMW OF TOWSON<br>50 Schilling Road, Suite 100<br>Hunt Valley, MD 21031<br>(Baltimore County),<br><br>                              Plaintiff,<br><br>vs.<br><br>CDK GLOBAL, LLC<br>1950 Hassell Road<br>Hoffman Estates, IL 60169,<br><br>                              Defendant. | 21-CV-____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Priority 1 Automotive Group, Inc. d/b/a BMW of Towson ("Priority"), by and through its undersigned attorneys, for its complaint against CDK Global, LLC ("CDK"), hereby alleges as follows:

### NATURE OF THE ACTION

1. This is an action for breach of contract based on CDK's misuse of Priority's data to create revenue generating services for CDK—without Priority's written consent. In late 2009, Priority entered into a Master Services Agreement with CDK, pursuant to which CDK agreed to provide a dealer management system ("DMS") to Priority (the "MSA"). A DMS is a computer system typically used by dealerships and large equipment manufacturers to help manage their businesses (*e.g.*, sales, parts, service, financing, payroll, and inventory). Over the years, Priority and CDK have entered into several addenda to the MSA (collectively the "Addenda").

2.      In the Addenda, CDK promised that it would not use Priority's data to create or supply revenue generating services without Priority's written consent.

3.      In or about mid-2016, CDK implemented a program—as part of an initiative known as "SecurityFirst"—to purportedly protect its customers' data. In reality, SecurityFirst, along with CDK's Third Party Access (3PA) Program ("3PA") and Dealer Data Exchange ("DDX"), are revenue producing services created by CDK, which use and/or rely on its customers' private data—with or without the customers' prior written consent.

4.      In other words, SecurityFirst is a systematic way for CDK to create revenue from its dealerships' private data. Under the guise of SecurityFirst, CDK has forced third-party software providers—whose products are also used in Priority's dealership stores—to pay additional funds to continue their integration with CDK's DMS. The third-party vendors then pass on CDK's fees to Priority. CDK has breached the Addenda by, among other things, creating and providing revenue generating services, which use and/or rely on Priority's private data without its written consent.

5.      Priority brings this action seeking monetary damages resulting from CDK's breaches of its obligations under the Addenda or, in the alternative, its unjust enrichment.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332(a)(1). The matter in controversy is between citizens of different states whose principal places of business are in different states. The amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over CDK because CDK performs services in Maryland, contracted to provide services in Maryland, and caused injury in Maryland. In addition, CDK is licensed to do business in Maryland as a foreign limited liability company and has initiated litigation in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

## PARTIES

9. Priority is a Maryland corporation with its principal place of business in Hunt Valley, Maryland. Priority is a family-owned and operated group of dealerships in Maryland, representing several brands including BMW, Cadillac, Jaguar, Land Rover, Porsche, MINI Cooper, Acura, and Audi.

10. On information and belief, defendant CDK is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Hoffman Estates, Illinois, and was formerly known as ADP Dealer Services. On information and belief, all of CDK's members are citizens of Delaware or Illinois. CDK provides DMS software and services to several types of customers throughout the United States and has more than $2 billion in annual revenue. In 2014, CDK was spun off from ADP, LLC, and is now an independent, publicly traded company.

## DMS PRODUCTS

11. A DMS is a computer system typically used by dealerships and large equipment manufacturers. A DMS consists of hardware and software that support all aspects of running a dealership, including the sales, parts, service, financing, inventory, and administrative components. In other words, a DMS is responsible for

performing the day-to-day transactions in a dealership from payroll and accounting to inventory and itemizing the costs of deals. A DMS is the lifeblood of a dealership.

## THE ADDENDA

12. Effective February 4, 2010, Priority entered into the MSA with CDK, pursuant to which CDK agreed to provide DMS software and services to Priority.

13. Priority has performed and continues to perform all of its obligations under the MSA.

14. Over the years, Priority and CDK have entered into several Addenda to the MSA.

### A. 2010

15. For example, effective February 2, 2010, Priority and CDK entered into an addendum to the MSA (the "2010 Addendum").

16. Priority has performed and continues to perform all of its obligations under the 2010 Addendum.

17. In the 2010 Addendum, CDK agrees that it does not own any of the data generated by Priority's DMS.

18. In the 2010 Addendum, CDK also promised that it would not use Priority's data to create or supply revenue generating services without Priority's written consent.

19. In the 2010 Addendum, CDK acknowledged that Priority may provide its third-party vendors with a user id and password for Priority's DMS in order to allow routine data extraction (or screen scrape) from the DMS and the use of a report generator.

B. <u>2015</u>

20. Effective December 9, 2015, Priority and CDK entered into another addendum to the MSA (the "2015 Addendum").

21. Priority has performed and continues to perform all of its obligations under the 2015 Addendum.

22. In the 2015 Addendum, CDK agrees that it does not own any of the data generated by Priority's DMS.

23. In the 2015 Addendum, CDK also promised that it would not use Priority's data to create or supply revenue generating services without Priority's written consent.

24. In the 2015 Addendum, CDK acknowledged that Priority may provide its third-party vendors with a user id and password for Priority's DMS in order to allow routine data extraction from the DMS and the use of a report generator.

C. <u>2017</u>

25. On July 26, 2017, Priority entered into another addendum to the MSA (the "2017 Addendum").

26. Priority has performed and continues to perform all of its obligations under the 2017 Addendum.

27. In the 2017 Addendum (which incorporated the terms of the 2015 Addendum by reference), CDK agrees that it does not own any of the data generated by Priority's DMS.

28. In the 2017 Addendum, CDK also promised that it would not use Priority's data to create or supply revenue generating services without Priority's written consent.

29. In the 2017 Addendum, CDK acknowledged that Priority may provide its third-party vendors with a user id and password for Priority's DMS in order to allow routine data extraction from the DMS and the use of a report generator.

### D. 2018

30. Effective May 3, 2018, Priority and CDK entered into another addendum to the MSA (the "2018 Addendum").

31. Priority has performed and continues to perform all of its obligations under the 2018 Addendum.

32. In the 2018 Addendum, CDK agrees that it does not own any of the data generated by Priority's DMS.

33. In the 2018 Addendum, CDK also promised that it would not use Priority's data to create or supply revenue generating services without Priority's written consent.

34. In the 2018 Addendum, CDK acknowledged that Priority may provide its third-party vendors with a user id and password for Priority's DMS in order to allow routine data extraction from the DMS and the use of a report generator.

### CDK'S BREACHES OF THE ADDENDA

35. Since at least 2010, with CDK's permission, Priority has integrated CDK's DMS with certain third-party software programs in its stores.

36. The third-party software programs augment CDK's DMS and are customized to meet the particular day-to-day needs of Priority's dealerships. Integration with these third-party software programs is a critical component of Priority's business.

37. In or about mid-2016, CDK implemented a new program—as part of an initiative known as "SecurityFirst"—to purportedly protect its customers' data. According to CDK, SecurityFirst addresses four security components: (a) industry education; (b) ongoing security initiatives; (c) 3PA; and (d) DDX.

38. However, SecurityFirst, 3PA, and DDX are revenue producing services created by CDK, which use and/or rely on its customers' private data—with or without the customers' prior written consent. Indeed, SecurityFirst is a systematic way for CDK to create revenue from its dealerships' private data.

39. Under the guise of SecurityFirst, CDK has forced third-party software providers, whose products are used in Priority's dealership stores, to pay additional funds to continue their integration with CDK's DMS.

40. On information and belief, CDK repeatedly disabled the user ids and passwords of Priority's third-party vendors who refused to pay the elevated fees, in an effort to coerce those vendors to join and participate in SecurityFirst, 3PA, and/or DDX. Permanently turning off third-party integration would have devastating effects on Priority's business, as the third-party software is crucial to the dealerships' daily operations.

41. Priority has received notices from several of its third-party providers indicating that they have no choice but to pass on the fees levied by CDK to Priority.

42. As a consequence of CDK's revenue generating services (*i.e.*, SecurityFirst, 3PA, and DDX), Priority is incurring additional and unnecessary costs from the third-party vendors who are forced to pay CDK to use these services (including but not limited to Xtime, DealerTrack, ELEAD1ONE, myKaarma, Mobile Productivity, MAX Digital, Kardex Remstar, J&L Marketing, CCC Information Services, Affinitiv, and ADS Alliance Data Systems).

43. The data, which CDK is claiming to protect, is owned by Priority—not CDK. In addition, CDK is already protected from Priority's use of third-party software products in the MSA and in the Addenda. SecurityFirst is nothing more than a blatant money grab.

## COUNT I

## BREACH OF CONTRACT

44. Priority repeats and incorporates herein by reference the allegations in paragraphs 1 through 43 above.

45. The MSA, including the Addenda, constitutes a valid and binding contract.

46. Priority has performed and continues to perform all of its obligations under the MSA and the Addenda.

47. CDK's creation and provision of revenue generating services, which use and/or rely on Priority's private data without its written consent, constitutes a breach of the Addenda.

48. On information and belief, CDK repeatedly disabled the user ids and passwords of those third-party vendors who refused to participate in SecurityFirst,

3PA, and/or DDX. CDK's disabling of user ids and passwords constitutes an additional breach of the Addenda.

49. As a result of CDK's breaches, Priority has been damaged in an amount in excess of $500,000.

## COUNT II

### UNJUST ENRICHMENT

50. Priority repeats and incorporates herein by reference the allegations in paragraphs 1 through 49 above.

51. As set forth above, CDK has created and provided revenue generating services, which use and/or rely on Priority's data—without its written consent.

52. On information and belief, CDK also disabled the user ids and passwords of Priority's third-party vendors who refused to participate in SecurityFirst, 3PA, and/or DDX, in an effort to coerce the vendors to join and participate in those programs.

53. Thus, at Priority's expense, CDK has received benefits that, under the circumstances, would make it unjust for CDK to retain those benefits without returning them.

54. As a direct and proximate result of CDK's unlawful and improper conduct, as set forth above, CDK has been unjustly enriched. Priority is therefore entitled, in the alternative only, to damages in an amount in excess of $500,000.

## PRAYER FOR RELIEF

WHEREFORE, Priority prays that this Court enter judgment in its favor and against CDK and enter an order as follows:

(a) awarding Priority its actual damages sustained as a result of CDK's breaches of the Addenda in an amount to be determined at trial, but in excess of $500,000, along with interest on such damages;

(b) for Priority's attorneys' fees, costs, and disbursements in this action; and

(c) for such other and further relief as the Court deems proper and just.

## DEMAND FOR JURY TRIAL

Priority hereby demands a jury trial on all issues.

Dated: May 26, 2021

                                   Respectfully submitted,

                                   /s/ Lee B. Rauch
                                   Steven R. Freeman (Bar No. 02927)
                                   Lee B. Rauch (Bar No. 12135)
                                   FREEMAN RAUCH, LLC
                                   409 Washington Avenue, Suite 200
                                   Towson, MD 21204
                                   Phone: (410) 842-6600
                                   Fax: (410) 825-1316
                                   srf@freemanrauch.com
                                   lbr@freemanrauch.com

                                   *Attorneys for Plaintiff*

Carmine J. Castellano
(*pro hac vice* application forthcoming)
HODGSON RUSS LLP
605 Third Avenue, Suite 2300
New York, NY 10158
(212) 751-4300
ccastell@hodgsonruss.com