IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **PRIORITY 1 AUTOMOTIVE GROUP, INC., d/b/a BMW of TOWSON,** | * * * * |  |
| Plaintiff, | * * | Civil Case No.: SAG-21-01309 |
| v. | * * |  |
| **CDK GLOBAL, LLC,** | * * |  |
| Defendant. | * * |  |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Priority 1 Automotive Group, Inc. ("Priority 1") filed this action against Defendant CDK Global, LLC ("CDK"), asserting claims for breach of contract and unjust enrichment relating to a license for a dealer management system. ECF 1. Discovery has now concluded and CDK has filed a motion for summary judgment. ECF 97. This Court has reviewed the motion, the opposition filed by Priority 1, ECF 107, and CDK's reply, ECF 109. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated herein, CDK's motion must be GRANTED because Priority 1's claims are barred by Maryland's three-year statute of limitations.

I.  **FACTUAL BACKGROUND**

Priority 1 operates a group of automotive dealerships in Maryland. ECF 97-4 at 57. Like other automobile dealers, Priority 1's dealerships rely on dealer management systems ("DMS") to operate their businesses. ECF 107-2 at 4. The DMS must be able to access, or integrate with, other third-party software products the auto dealers use in their businesses. *Id.* at 4–5. In 2010, Priority 1 entered a Master Services Agreement ("MSA") with CDK under which CDK licensed DMS software to Priority 1's dealerships. ECF 107-5. In the negotiations, Priority 1 retained a DMS

expert named Jane Copeland to represent its interests. ECF 107-3 at 58:14–19. Ms. Copeland uses standard addenda in her practice, prohibiting CDK from "us[ing] dealer data in any form (aggregate or otherwise) to create revenue generating services" and requiring that CDK "obtain prior written consent from the Dealer" before supplying dealer data to a third party. ECF 104-2 at 15–16. Such an addendum became part of the MSA, and subsequent addenda entered by Priority 1 and CDK also included the pertinent "Copeland" language. *See* ECF 104-7; 104-8; 104-9.

In 2015, CDK announced its SecurityFirst initiative, which required all third-party vendors to enroll in its program and pay fees to CDK in order to integrate with CDK's DMS. ECF 104-11. Third-party vendors who did not enroll in CDK's program would be cut off and could not access Priority 1's DMS. *Id.* Beginning in or about 2016, Priority 1's dealers began receiving notifications from their third-party vendors that they were forced to enroll in CDK's program and were passing the fees they had to pay CDK on to Priority 1. *See, e.g.*, ECF 104-12; ECF 104-13 at 63:1–13, 94:4–9. Priority 1 first learned about CDK's SecurityFirst program in 2015 or 2016. ECF 104-13 at 94:10–15; ECF 104-3 at 83:17–23. On June 29, 2016, Priority 1 notified CDK that its SecurityFirst initiative breached the MSA and its addenda. ECF 104-16.

Other dealerships' SecurityFirst-related lawsuits against CDK were centralized for pre-trial proceedings by the U.S. Judicial Panel on Multidistrict Litigation in 2018. ECF 107-31. Nevertheless, Priority 1 did not file the instant action against CDK until May 26, 2021. ECF 1.

## II. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek*

*Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Casey*, 823 F. Supp. 2d at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Where, as here, the movant seeks summary judgment on an affirmative defense like the statute of limitations, "it must conclusively establish all essential elements of [the]

defense." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (citing *Celotex*, 477 U.S. at 331).

## III.  ANALYSIS

CDK contends that Priority 1's claims are barred by the statute of limitations. This Court addresses the relevant issues to that contention below.

### A.  CHOICE OF LAW

Priority 1 argues that New Jersey's six-year statute of limitations applies because the parties' MSA provides that it would be governed "in all respects" by New Jersey law. ECF 98-6 ¶ 21.H. This case, however, proceeds under this Court's exercise of diversity jurisdiction, and this Court must apply Maryland law. *See Havard v. Perdue Farms, Inc.*, 403 F. Supp. 2d 462, 466 (D. Md. 2005) (citing *Limbach Co., v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005)) (explaining that a federal court sitting in diversity must apply the choice of law rules of the forum state); *Doughty v. Prettyman*, 148 A.2d 438, 440 (Md. 1959) (stating that under Maryland choice of law rules, statutes of limitations are matters of procedural law governed by the law of the forum state). Maryland law establishes a default three-year statute of limitations for civil actions, unless another provision states otherwise. MD. CODE ANN., CTS. & JUD. PROC. § 5-101. And Maryland courts "follow[] the general rule that the statute of limitations of the forum state applies even when . . . the contract explicitly includes a choice of law provision specifying that out-of-forum law applies to the agreement, because the statute of limitations is a procedural, rather than a substantive, issue." *Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 2d 739, 756–57 (D. Md. 2001); *see also Akinmeji v. Jos A. Bank Clothiers, Inc.*, 399 F. Supp. 3d 466, 472 (D. Md. 2019) ("Maryland courts almost universally view issues pertaining to the statute of limitations as procedural, not substantive."). Accordingly, despite the MSA's express choice-of-law provision,

this Court applies the procedural law of the forum state, Maryland, and its three-year statute of limitations.

### B. ACCRUAL OF CLAIMS

Priority 1 concedes that it "discovered the conduct underlying its claims and complained to CDK" in 2016. ECF 107 at 32. Under Maryland law, "a claim accrues when the plaintiff knew or reasonably should have known of the wrong." *Cain v. Midland Funding, LLC*, 256 A.3d 765, 783 (Md. 2021) (internal quotations and citation omitted). Therefore, absent some basis for tolling the statute of limitations, Priority 1's claims accrued no later than 2016, and its three-year limitations period expired in 2019.

### C. CONTINUING HARM DOCTRINE

In attempting to contend that the limitations period should be tolled, Priority 1 argues two similar versions of a "continuing harm" argument. ECF 107 at 32–33. First, it contends that CDK breached the MSA anew "each time it issued a monthly invoice" to Priority 1 from 2015-2022. *Id.* at 32. Second, it invokes the "continuing harm doctrine," which "tolls the statute of limitations in cases where there are continuing violations." *Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 820 (D. Md. 2015) (citation omitted). "Under this doctrine, 'every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated.'" *Id.* (quoting *Jones v. Speed*, 577 A.2d 64, 69 n.4 (Md. 1990)).

The parties dispute whether the continuing harm doctrine applies to contract claims in Maryland, each citing cases that do not provide conclusive guidance. Priority 1 relies upon an unpublished 2015 opinion from the United States Court of Appeals for the Fourth Circuit, *Dave & Buster's, Inc. v. White Flint Mall, LLP*, in which the Fourth Circuit concluded that "under

5

Maryland law, the continued operation of a competing enterprise can constitute a continuous breach of a contractual obligation so long as the contract under which the obligation rose is valid and in effect." 616 F. App'x 552, 557 (4th Cir. 2015). The court relied specifically on the fact that "certain covenants imposing ongoing negative obligations are covenants *de die in diem* and can be breached continuously, or on a daily basis." *Id.* at 556 (citation omitted). In so ruling, however, the Fourth Circuit reiterated "that Maryland's theory of continuing breach of contract is a limited one" and that, in the *Dave & Buster's* case, "the facts do not present a single, isolated breach." *Id.* at 557–58. The Fourth Circuit specifically stated that it did not "read the Court of Appeals of Maryland to be endorsing a wide-reaching continuous breach exception to the statute of limitations." *Id.* at 557.

For its part, CDK cites a more recent 2021 decision from the then-Maryland Supreme Court. *See Cain v. Midland Funding, LLC*, 256 A.3d 765 (Md. 2021). In *Cain,* the Maryland Supreme Court considered application of the continuing harm doctrine in a situation where debtors had made multiple payments on a judgment debt over a period of time. In considering the handful of instances in which Maryland appellate courts discussed the continuing harm doctrine, the Maryland Supreme Court noted that "the doctrine is usually applied in nuisance, trespass, and other tort cases." *Id.* at 791. The court stopped short of finding definitively that the continuing harm doctrine cannot apply in contract cases, however, instead declining to apply it in *Cain* because of the particular facts of that case. *Id.* at 793.

Here, this Court need not decide the overarching question of the doctrine's reach. Even if the continuing harm doctrine can apply in a limited number of contract cases, this Court concludes that it would not apply to the facts of this case. Instead, this case is closer to other cases where courts declined to apply the doctrine. In *Curry v. Trustmark Ins. Co.*, a defendant insurance

6

company ceased making monthly payments under a plaintiff's disability insurance policy after the plaintiff failed to attend an independent medical examination. 600 F. App'x 877, 879 (4th Cir. 2015). The *Curry* plaintiff filed his lawsuit more than three years after the effective date of the denial of further benefits. *Id.* at 879. Despite the fact that the plaintiff had been entitled to monthly benefit payments that continued to be unpaid, the Fourth Circuit declined to apply the "continuing breach theory" of accrual. *Id.* at 880. In so ruling, the court noted that "federal district courts in Maryland have concluded that while harm in a given case may be continuous, often there exists only a single violation of breach 'from which all of Plaintiff's harm flowed.'" *Id.* (quoting *Montrose Educ. Servs., Inc. v. Sylvan Learning Sys., Inc.*, Civ. No. RDB 06-308, 2007 WL 979923, at *5 (D. Md. Mar. 30, 2007)). In *Curry*, there was a single breach when benefits were denied.

Similarly, in *General Insurance Co. v. America v. Walter E. Campbell Co.*, the court decided that limitations began to run when an insurance company declared its policy limits exhausted, and that no subsequent breaches occurred when the insurance company denied subsequent claims under the policy. 241 F. Supp. 3d 578, 591 (D. Md. 2017). As the court reasoned, the later damages "were natural consequences of the breach and only affected the extent of the injury Plaintiff would sustain as a result of the alleged breach. They did not constitute separate breaches that started the limitations period anew." *Id.* (quoting *Ruddy v. Equitable Life Assurance Soc'y*, Civ. No. DKC 00-70, 2000 WL 964770, at *5 (D. Md. June 20, 2000)). The *General Insurance* court noted that construing the limitations period in this way is "most consistent with the purposes of statutes of limitations," because application of the continuing harm doctrines in these contexts would allow plaintiffs to permit claims to become stale before challenging a single decision that later applies on a monthly basis. *Id.*

The same rationale applies in this case. The sole breach allegedly occurred when CDK used Priority 1's data to create a revenue generating service, SecurityFirst. While Priority 1 continued to suffer damages on a monthly basis from that breach, those damages do not constitute separate breaches and do not restart the limitations period. Any alternative holding would allow a future plaintiff like Priority 1 to defer filing suit in perpetuity, depriving the defendant of a fair and prompt opportunity to defend the alleged breach when evidence is available and memories are fresh. Such a practice would radically undermine the purpose of the statute of limitations.

Here, Priority 1 knew of CDK's perceived breach in early 2016 and advised it of such breach on June 29, 2016. ECF 98-26 at 6 ("This activity breaches our agreement and we ask you to cease and desist this practice immediately."). Because Priority 1 did not then file suit until May 26, 2021, its claims are barred by Maryland's three-year statute of limitations.

## IV. CONCLUSION

For the reasons stated above, CDK's Motion for Summary Judgment, ECF 97, is GRANTED.

A separate Order follows.

Dated: June 20, 2024                                    /s/
                                                Stephanie A. Gallagher
                                                United States District Judge